THE DETROIT & MILWAUKEE RAILROAD COMPANY vs. CURTIS and wife.

*Railroad Company : — Injury to the person — Negligence.*

1. Where there was evidence tending to show that a railroad train had come to a full stop, and that the persons waiting to get upon it were told to go on board by the persons in charge of it, and that the plaintiff below, in attempting to get aboard, was injured in consequence of the sudden starting of the train, it was not error to leave to the jury the question of the negligence of the parties.
2. Nor were the facts that plaintiff below was told by the company's servants to get on the *hind* car, and that he was injured in trying to get on *another* passenger car, such conclusive proof of negligence on his part as to take the case from the jury.
3. It was error to instruct the jury that if it appeared that in case the company had had an agent, wearing its badge, whose special duty it was to warn passengers not to go on board until the cars stopped, and to inform them into what cars to enter, etc., this would have prevented the injury, and that there was no such agent there, then defendant was guilty of negligence.

ERROR to the County Court of *Milwaukee* County.

The action below was by *Curtis and wife* against the railroad company, for injuries to the person of *Mrs. Curtis* from her being thrown from the platform of a car on one of the company's trains, in consequence of the sudden starting of the train while she was getting upon it.

The evidence in behalf of the plaintiffs, consisting of their

The Detroit and Milwaukee R. R. Co. vs. Curtis and wife.

own testimony and that of three other persons, passengers on the same train, and one of them a physician and surgeon, tended to show, that the train consisted, besides freight cars, etc., of *three* passenger cars, of which the hindmost was a sleeping car; that it was behind time; that, on arriving at the station where the accident occurred, it stopped for a very short time, not sufficiently long for the persons who were waiting for it at that station (some twenty-five or thirty) to get aboard, and then started without any signal being given; that the plaintiffs did not attempt to get aboard until it came to a complete stop; that, " when the train came up, some person with a light, on the top of the cars, told the passengers (the persons waiting on the platform), to go to the hind cars and get aboard ; " that the plaintiffs went along with others to get aboard ; that they were about to go into the " hind car but one" at the front end, but found it was crowded, and, therefore, got on to the rear end of the next car; that as *Mrs. Curtis* was about to enter the door of that car, the train started suddenly, without any signal being given, and this threw her off between the two cars, and the train ran about the length of two cars, crushing one of her hands and one of her feet before it was stopped.  The testimony on the part of the railroad company tended to show that there were *four* passenger cars ; that the sleeping car was second from the rear ; that the rear car was intended for the use of passengers from the Grand Trunk road, who would be found at the station in question ; that these passengers usually consisted largely of emigrants and of persons from the interior of Canada, not much accustomed to traveling, on which account the company's agents were more particular at that station than others in warning them from crowding near the cars while in motion and instructing them where to get on; that the train had not stopped for the purpose of receiving the passengers and baggage at the time the plaintiffs got aboard, but there was, at most, only a stoppage for a few moments (if at all), such as often

necessarily occurs in bringing a long train to the exact point where it should be located, and then they ran forward a few feet to " take up the slack of the train," and get in the right position ; that no person in the employ of the company was on the top of any of the cars; that the conductor and one of the brakemen, as the train passed along, warned the persons on the platform to keep away from the cars; and that no one directed the passengers to get into the hind car, or directed them to get aboard at all, until after the accident happened.

A motion by the company, after the evidence was all in, that the case be taken from the jury, was denied. The court gave various instructions prepared by the respective counsel, and among others the following asked by the plaintiff below: " 4. If *Mrs. Curtis* got upon the train after it had stopped, and under circumstances which warranted her to believe that it had stopped for the reception of passengers, and she did so believe, and attempted to enter one of the passenger cars, under the circumstances, with ordinary care and prudence, then she was not guilty of such negligence as would prevent a recovery in this action." To which the court added in writing: " If you find for the plaintiffs on this last proposition, then, if you believe, from the evidence and circumstances developed in the case, that if an agent of the defendant had been upon the platform, wearing the company's badge, whose duty it was, before the train reached the platform, to inform the passengers into which car to enter, that there was room for all, and that they should not attempt to go aboard until the train stopped or they were called to go aboard, and that such agent and such acts would have prevented the injury to the plaintiff, and if such agent was not there, then defendant was guilty of negligence."

The court then added, orally, in substance, that it gave this instruction for the purpose of having the jury inquire whether, under the circumstances of this case, it was not defendant's

duty to have such an agent upon the platform looking after those passengers and seeing them aboard, if they were, as the evidence tended to show, emigrants, and unaccustomed to traveling, and if defendant knew that such persons were in the habit of coming upon their road upon that train, etc.

Verdict for plaintiffs below; motion for a new trial denied; and judgment upon the verdict; which the railroad company seeks here to reverse.

*Emmons & Van Dyke*, for the plaintiff in error, contended, among other things, that it is not enough to say that there is some evidence tending to show negligence on the part of defendant, to justify the judge in leaving the case to the jury; but there must be evidence upon which the jury could reasonably and properly conclude that there was such negligence. *Toomey v. Railway Co.*, 3 C. B. (N. S.) [91 E. C. L.], 146; *Cornman v. Railway Co.* 4 Hurl. & N. 781; *Colton v. Wood*, 8 C. B. (N. S.) [98 E. C. L.] 568. "Where the evidence is equally consistent with either view — with the existence or the non-existence of negligence — it is not competent to the judge to leave the matter to a jury. The party who affirms negligence has altogether failed to establish it." Williams, J., in *Toomey v. Railway Co., supra; Phil. & Reading Railroad Co. v. Hummell*, 44 Pa. St. 375. To the point that while the question whether particular facts occurred is one for the jury (when there is sufficient evidence to justify submitting it to them), the question whether those facts constitute negligence is one for the court, counsel cited 18 Barb. 80, 85–89; 14 id. 585; 29 id. 226; 27 id. 544; 22 id. 574; 37 id. 716; 40 id. 546; 49 Pa. St. 60; 10 Allen, 387, 432; 9 N. Y. 456; 4 id. 349; 18 id. 422; 22 id. 191; 24 id. 430; 29 id. 315; 34 id. 9, 670; 5 Duer, 674; 1 E. D. Smith, 64; 18 Ind. 215; 24 Pa. St. 465; 35 id. 60; 7 Wis. 425, 527; 9 id. 202; 18 id. 331; 20 id. 254, 344.

*Butler & Winkler*, for the defendants in error, as to the respective provinces of the court and jury in determining the

question of negligence, cited *Ernst v. R. R. Co.*, 35 N. Y. 38, 40, 41; *Ireland v. Pl. R. Co.*, 3 Kern. 533; *Warren v. R. R. Co.*, 8 Allen, 231; *Spencer v. Railway Co.*, 17 Wis. 487; *Langhoff v. Railway Co.*, 19 id. 496.   2. If the facts mentioned in the fourth instruction, as asked by the plaintiffs below, were true, then the train had no right to move until *Mrs. Curtis* was safely seated inside the car.   And all the subsequent remarks of the judge, on the subject of the defendant company's negligence, were emphatically based on the proviso *that those facts be first found.*   But upon those facts the court might properly have directed a verdict for the plaintiffs.   And if the train stopped " under circumstances which warranted *Mrs. Curtis* to believe that it had stopped for the reception of passengers, and she did so believe, and attempted to enter one of the passenger cars with ordinary care and prudence;" and if it was necessary thus to stop the train, in the night-time, and to start it again, without signal or other notice, before it was intended that passengers should go aboard, ought not the company to have had a man at the station to warn the passengers against the dangers into which they were invited by appearances held out to them by its employees in charge of the train ?   Compiled Laws of Mich., vol. 1, chap. 67, § 31.   If, by the negligence or omission of those in charge of the train, *Mrs. Curtis'* vigilance was allayed, they are not at liberty to impute the consequence of their acts to her want of vigilance — a quality of which they deprived her.   *Pa. Railway Co. v. Ogier*, 35 Pa. St. 71, 72. It was a part of the company's case, testified to by its employees, and urged upon the jury, that the passengers who came upon the road at that station were, as a class, ignorant of travel, and that they habitually clambered upon the trains while in motion. And the jury were told, in immediate connection with this instruction, that it was given that they might inquire whether, under all the aspects of the case, the company was not under

JUNE TERM, 1868.            157

The Detroit and Milwaukee R. R. Co. vs. Curtis and wife.

obligation to have an agent on the platform to look after the passengers, etc.

· PAINE, J.   I cannot assent to the position of the counsel for the plaintiffs in error, that there was such an absence of evidence of any negligence on the part of the company, and such clear proof of negligence on the part of the plaintiffs below contributing to the injury, that the court should have taken the case from the jury.   If it had appeared that the train was brought to a stand in the usual manner, and that the plaintiff who was injured, had, of her own motion and without any instigation from the agents and servants of the company, attempted to go on board before the cars had fairly stopped, and during the jerking motions that usually result, as the proof shows, in stopping a long train, and had been injured by reason of such attempt, there would be much more ground for sustaining this position.   But here there is evidence tending to show that the train came to a full stop, and that the passengers were told to go on board by the persons in charge of the train.   There is certainly proof tending to show that the train had come to a full stop after the jerking motions, resulting from checking its speed, had ceased.   Not only the direct statements of the witnesses, but the fact that all the passengers at the station were getting on board at the same time the plaintiffs did, tends to show this; for though there is occasionally an individual who will take the risk of getting on board before the cars stop, yet passengers generally do not.   But even if it had not come to a full stop, and the stop during which the plaintiffs attempted to go on board, was one of those which resulted merely from checking the speed of the train, as the counsel urges, yet when the passengers were told by those managing the train to go on board, they had a right to assume that the train was ready for their reception, and cannot be charged with negligence in following that direction, the train, when they attempted to enter,

being actually still at the time.   If the train was not ready for their reception, it was a clear act of negligence in the servants of the company to tell them to go on board, as the proof shows was done in this case.

And it makes no difference that they were told to go to the hind car, and that the plaintiffs, instead of doing so, attempted to enter the third car from the rear.   The conclusion which they had a right to draw from being told to go on board in any car was, that the train was ready to receive them.   And the direction to go to the hind car could only have been reasonably understood as informing them where they could most conveniently find seats.   There was no occasion for them to infer that they were guilty of any negligence or exposing themselves to any danger if they entered another car.   And if the plaintiff was guilty of no other negligence than that, and was injured by starting the cars suddenly and without notice, while so entering, she ought to recover.   The question of negligence is one of fact for the jury, and will be submitted to them, except in those cases where the proof is so clear and decisive in its character as to warrant the court in saying, as a matter of law, that there is nothing to submit.   And that, certainly, was not the case here.

But there is one proposition in the instructions given by the court, which I think cannot be sustained.   It is found in the remarks immediately succeeding the fourth instruction asked by the plaintiffs, partly as an addition to that instruction, and partly in further enlarging upon the same idea.   Without quoting them literally, it is enough to say that they told the jury that if they believed from the evidence that if the company had had an agent, wearing its badge, whose special duty it was to warn passengers not to go on board till the cars stopped, and to inform them in what cars to enter, and to tell them that there was room for all, etc., and that such an agent would have prevented the injury, and that there was no such

agent there, then the defendant was guilty of negligence, and liable in the action. I know of no law requiring this of railroad companies. And while they are justly held to a strict responsibility, and required to exercise the highest degree of care and diligence to provide for the safety of their passengers, yet I think no such application of this rule as that contained in this proposition of the court below, has ever been made, and that it would be unreasonable to make it. The extreme vigilance and care required of them relate usually to the proper construction and management of their cars and road. But the instruction of the court below would hold the company liable, although there was no negligence whatever in the management of its train, because it did not have a special agent to warn the plaintiff not to go on board till the cars had stopped, and to give her general information about getting on board. This it was not bound to do. On the contrary, it had a right to assume that the plaintiff, and all other persons traveling, possessed that ordinary intelligence and prudence necessary to enable them to take care of themselves, in view of the ordinary incidents of traveling upon railroads that are constructed with proper care and skill. Getting on and off the cars are among these incidents. To attempt to get on or off while the cars are in motion is an act of negligence. And to say that a railroad company is liable for not having a special agent to prevent passengers from injuring themselves by such acts, is to say that without any other negligence on its part, it is to be held liable for not having an agent to prevent passengers from injuring themselves by their own want of ordinary care and prudence. There is no reason or authority for such a proposition. Nor can I see any support for it in the section of the statute of Michigan which was proved at the trial, and which, it is suggested, " contemplates " the appointment of such an agent. I cannot see that it in any way contemplates or implies the existence of an agent for such a purpose. It seems to be

nothing more than a provision requiring such agents as the company does have, to wear a badge indicating their respective offices.

As the evidence was conflicting, and it is impossible to say what effect the jury may have given to this instruction, the judgment must be reversed, and the cause sent back for a new trial.

*By the Court.*—Ordered accordingly.